UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLISON DANIELLE GADD,

      Plaintiff,

v.                                   Case No.:  6:22-cv-932-KCD

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## <u>ORDER</u>

    Plaintiff Allison Danielle Gadd sues under 42 U.S.C. § 1383(c)(3)[1] for judicial review of the Commissioner of Social Security's decision denying her application for supplemental security income. (Doc. 1.) The procedural history, administrative record, and law are summarized in the parties' briefs (Docs. 22, 25, 26, 27) and not fully repeated here.

    Gadd raises one issues on appeal—whether the ALJ properly considered a medical opinion from consultative examiner Blanca Lopez, Psy. D. (Doc. 22 at 10-18.) The Commissioner contends there is no error. For the reasons below, the Commissioner's decision is affirmed.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Review of the Commissioner's (and, by extension, the ALJ's) decision denying disability benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the Commissioner's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Dyer*, 395 F.3d at 1210. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The ALJ found Gadd had severe impairments of psoriasis, obesity, ADHD, bipolar disorder, major depressive disorder, and generalized anxiety

disorder. (Tr. 27.) He further found Gadd has the residual functional capacity (RFC) to perform light work, subject to additional mental limitations:

> The claimant is able to perform simple, routine, repetitive tasks, or jobs that can be learned in 30 days or less consistent with a reasoning level of 1-3 per the Dictionary of Occupational Titles (DOT). She is able to understand, remember and carry out simple instructions and is limited to work that requires no interaction with crowds but she could occasionally interact with the public and frequently interact with co-workers and supervisors.

(Tr. 32.) Considering the RFC and the other evidence, the ALJ concluded Gadd can perform three jobs that exist in significant numbers in the national economy and thus is not disabled. (Tr. 40-41.)

As mentioned, Gadd argues the ALJ erred in assessing the medical opinions from Blanca Lopez, Psy. D. (Tr. 1019-24.)[2]

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 416.913(a)(2). When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3)

---

[2] Gadd's brief also claims the ALJ's "RFC determination was unsupported by substantial evidence it failed to incorporate Plaintiff's manipulative limitations." (Doc. 22 at 10.) Despite this broad statement, Gadd offers no substantive argument about any physical impairments. Her brief instead focuses on the ALJ's evaluation of Dr. Lopez's opinion, who performed a psychological consultation. Gadd has thus abandoned any arguments related to her physical impairments, let alone any specific manipulative limitations. *See, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting the Eleventh Circuit has "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority").

relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." *Id.* § 416.920c(a).

Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* § 416.920c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion.

Lopez evaluated Gadd in 2021 and completed a check-box questionnaire titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (Tr. 1019-20.) Lopez opined that Gadd had moderate limitations in three areas: understanding and remembering complex instructions; carrying out complex instructions; and interacting appropriately with the public, supervisors, and coworkers. (Tr. 1019-20.) She also concluded that Gadd had marked limitations in her ability to make judgments on complex work-related decisions and respond appropriately to usual work situations and changes in the routine work setting. (Tr. 1019-20.) Lopez further stated that Gadd could carry out and understand simple instructions, had difficulty understanding

complex instructions and might need clarification, and struggled with face-to-face interaction, but would do well with online interaction. (Tr. 1019-20.)

Lopez assessed Gadd for severe recurrent major depressive disorder and generalized anxiety disorder. (Tr. 1024.) She noted Gadd's mental health symptoms appeared to moderately to severely affect her activities of daily living, vocational performance, and interpersonal interactions. (Tr. 1024.)

In assessing Lopez's opinions, the ALJ found them partially persuasive:

> There is nothing in the medical evidence revealing the claimant experiences issues this serious with adapting. The claimant was taking a full course load in September 2020 and working as a graduate research assistant with her current stressors being a friend dying from cancer and the recent loss of her uncle and cousin (Exhibit C10F/2). In October 2020, she reported the sudden death of her brother (Exhibit C11F/2). In November 2020, she reported stress because of upcoming final projects and was managing her moods (Exhibit C13F/2). While the claimant noted concerns about finishing projects while classes switched to online (Exhibit C4F/3), she was able to graduate (Exhibit C13F/2) which shows adaptability, as she was able to complete her degree with multiple stressors. Additionally, she has a history [of] medication non-compliance (Exhibits C4F/21, 37; C14F). The undersigned finds the mental residual functional capacity found herein is consistent with the medical evidence of [the] record as a whole.

(Tr. 38.) Gadd argues the ALJ failed to conduct a supportability analysis, and his consistency analysis is flawed.

Contrary to Gadd's claim, the ALJ shared how he evaluated supportability and consistency and properly determined that Lopez's opinions were partially persuasive. (Tr. 38.)

As to supportability, while the ALJ may not have parroted the word "supportability," the decision addressed this factor through its discussion of the record evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]"). The ALJ explained how Lopez's opinion conflicted with her exam findings. Specifically, the ALJ noted that during the examination Gadd had good basic grooming and hygiene; adequate eye contact; displayed a positive attitude; cooperated; had unremarkable behavior; speech was unremarkable; alert and oriented x 4; good attention and concentration; displayed no significant difficulties in processing speed and she recalled 3/3 words immediately and after a short delay; thought processes appeared coherent, logical, and goal-directed; she appeared somatically focused; denied a history of suicidal/homicidal attempts; denied current ideations and denied psychotic features. (Tr. 36, 1022-24.) Given this evidence, Lopez's own exam of Gadd provides the necessary framework for the ALJ to doubt the proffered medical opinion that her mental health symptoms severely impacted her ability to work.

As to consistency, the ALJ noted that Gadd's activities and work-history were inconsistent with her allegations of disabling conditions that prevent her from adapting. (Tr. 38); *see* 20 C.F.R. § 416.920c(b)(2). Contrary to Lopez's

opinion that Gadd had marked limitations in her ability to respond appropriately to usual work situations and changes in the routine work setting, the ALJ noted Gadd was taking a full course load in September 2020 and working as a graduate research assistant with her current stressors. (Tr. 38, 958.) While Gadd noted concerns about finishing projects while classes switched to online (Tr. 38, 644), she was able to graduate with multiple life stressors, which shows adaptability to change. (Tr. 38, 968.)

As the ALJ said, Lopez's opinions were also inconsistent with the findings from other sources in the record, including state agency psychologists. (Tr. 38-39, 99-101, 120-22.) State agency consultants are highly qualified and experts in Social Security disability evaluation, although an ALJ need not adopt prior administrative medical findings. *See* 20 C.F.R. § 416.913a(b)(1). Here, the ALJ noted the state agency consultants found Gadd could adjust to routine changes in the work setting and she was moderately limited with public interaction. (Tr. 38-39, 99-101, 120-22.) The ALJ found these opinions partially persuasive because, again, while the ALJ agreed Gadd should be limited to unskilled work, the record fails to confirm she experienced even moderate limitations in adapting. (Tr. 38-39.)

Gadd separately argues the ALJ failed to consider the impact that accommodations would have on her ability to work full-time as she testified that she could not keep a research assistant job because she could not focus

long enough, that a professor allowed her to work from home, and that she received extra time in a quiet room. (Doc. 22 at 15-16.)

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A court will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ found, "[a]fter careful consideration of the evidence, . . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 35.) The ALJ continued, "[h]owever, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 35.)

Besides the medical evidence discussed above, the ALJ articulated explicit and adequate reasons for rejecting Gadd's testimony about symptoms and limitations. The ALJ considered Gadd's activities and that she received accommodations. (Tr. 31, 34-35.) The ALJ summarized the medical evidence related to mental impairments to outline the improvements shown in the medical records and that otherwise show conservative treatment to support

that Gadd can perform light work with additional limitations. (Tr. 31-32, 36.)

For example, the ALJ stated:

> The claimant has received conservative treatment for her psychiatric issues with prescribed medication. Since the alleged onset date, she has not engaged in therapy despite testifying that mental health symptoms prevent all work activity. She has not presented to an office visit or emergency department with uncontrollable mental health symptoms and has not required any inpatient treatment. There is no medical evidence of any physician finding that the claimant has had persistent and adverse side effects due to any prescribed medication, resulting in significant limitations of her functional capacity, or which were incapable of control by medication adjustments or changes. Moreover, the claimant earned a Master's degree in a complex area after her application date.
>
> . . .
>
> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by her treating physicians. Yet a review of the record in this case reveals no restrictions recommended by the treating physicians or counselors.

(Tr. 36-37.)

Substantial evidence supports those reasons. The medical records, as discussed by the ALJ, show that Gadd was not as limited as he alleged. (*See* Tr. 959, 963, 969, 985 (unremarkable mental status exams)).

While a different factfinder may well have credited Lopez's opinions, that is not the test. The dispositive question here is whether there is "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154. "The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed

the medical evidence." *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020). Given this low bar, the Court will affirm.

That leaves one final issue. Gadd argues the ALJ's errors were not harmless. (Doc. 22 at 17-18.) But harmlessness only comes to bear if there were errors. Gadd has demonstrated none, and thus this argument is moot.

The Court thus **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Allison Danielle Gadd and close the file.

**ORDERED** in Fort Myers, Florida on May 19, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record